# THE STATE OF NORTH DAKOTA v. CORNELIUS GOETZ.

### (131 N. W. 514.)

**Jury — Challenge for Cause ——Waiver.**

1. Failure to exercise a peremptory challenge is a waiver of previous objection to a juror to whom a challenge for cause had been taken and disallowed.

**Criminal Law — New Trial — Challenge to Juror — Waiver of Objections.**

2. Before a new trial will be ordered because of an erroneous or prejudicial ruling of the trial court in denying a challenge for cause, the record must affirmatively show that all peremptory challenges allowed by law to the defendant had been exercised, and that for such reason he was unable to remove by peremptory challenge such objectionable juror.

**Criminal Law — Objections to Evidence.**

3. The trial court properly sustained objections to certain hypothetical questions, there being no evidence upon which to base the expert testimony offered.

**Bastards — Instructions — Burden of Proof.**

4. *Held*, that the court did not, in its instructions, misplace the burden of proof, and that defendant was not entitled to a new trial because of the nonappearance of a witness under subpœna.

**Bastards — Evidence — Sufficiency.**

5. Evidence examined, and *held* sufficient to sustain conviction.

Opinion filed May 6, 1911. Rehearing denied May 29, 1911.

Appeal from District Court, Pierce county; *Burr,* Judge.

Cornelius Goetz was convicted of crime, and appeals.

Affirmed.

*John O. Hanchett,* for appellant.

*B. L. Shuman,* for respondent.

Goss, J. Defendant appeals to this court from a judgment entered on a verdict in the district court of Pierce county, in which he was adjudged to be the father of a child born to an unmarried woman of that county. The proceeding was a prosecution under the bastardy statute.

Error is assigned on the court's denial of a challenge for actual bias, interposed by the defendant to one of the jurors who acted as such on

the trial. It is not necessary to review the ruling of the trial court in this particular. The record fails to disclose prejudicial error, it not appearing affirmatively that the defendant, at the time of the ruling complained of, had exhausted his peremptory challenges allowed by statute. Though the court erred in its ruling of the *voir dire* of a juror, the defendant not having exhausted his peremptory challenges, passed peremptory to the panel, thereby accepting the jury while having it in his power to have removed the objectionable juror, he, by failing to remove him, waived the objection formerly interposed, and likewise the court's erroneous ruling thereon, granting that the same was such. The privilege of challenging a proposed juror is dependent upon and conferred by statute, and is not a constitutional right, and may be waived even in capital cases.

Queenan v. Territory, 11 Okla. 261, 61 L.R.A. 234, 71 Pac. 218, affirmed on appeal in 190 U. S. 548, 47 L. ed. 1175, 23 Sup. Ct. Rep. 762; see also Wassum v. Feeney, 121 Mass. 93, 23 Am. Rep. 258; Kohl v. Lehlback, 160 U. S. 293–301, 40 L. ed. 432–435, 16 Sup. Ct. Rep. 304; Raub v. Carpenter, 187 U. S. 159, 47 L. ed. 119, 23 Sup. Ct. Rep. 72.

And the failure to object to a collected jury waives all questions improperly excluded on *voir dire* and all matters of irregularity occurring during the impaneling of such jury, and a party failing to challenge waives thereby all irregularities in the impaneling of a jury; and this rule applies to all rulings of the court on the question of competency of jurors.

Flynn v. State, 97 Wis. 44, 72 N. W. 373; Emery v. State, 101 Wis. 627, 78 N. W. 145; Wassum v. Feeney, 121 Mass. 93, 23 Am. Rep. 258; Kohl v. Lehlback, 160 U. S. 293, 40 L. ed. 432, 16 Sup. Ct. Rep. 304; Raub v. Carpenter, 187 U. S. 159, 47 L. ed. 119, 23 Sup. Ct. Rep. 72; Cornell v. State, 104 Wis. 527, 80 N. W. 745; Brinegar v. State, 82 Neb. 558, 118 N. W. 475; Queenan v. Oklahoma, 190 U. S. 548, 47 L. ed. 1175, 23 Sup. Ct. Rep. 762; McNish v. State, 47 Fla. 69, 36 So. 176; Webster v. State, 47 Fla. 108, 36 So. 584; Lindsey v. State, 111 Ga. 833, 36 S. E. 62; Adams v. State, 99 Ind. 244, 4 Am. Crim. Rep. 309; State v. Carpenter, 124 Iowa, 5, 98 N. W. 775; State v. Furbeck, 29 Kan. 532; Morgan v. State, 51 Neb. 672, 71 N. W. 788; Reed v. State, 75 Neb. 509, 106 N. W. 649; O'Rourke v. Yonkers R. Co. 32 App. Div. 8, 52 N. Y. Supp. 706; Goad v. State, 106 Tenn.

175, 61 S. W. 79; Morse v. Montana Ore Purchasing Co. 105 Fed. 337, 12 Decen. Dig. 206; 24 Cyc. 320; and numerous authorities cited. "It was his (defendant's) duty to object at the time if he was going to object at all. He could not speculate on the chances of getting a verdict, and then set up that *he had not waived his rights."* Queenan v. Oklahoma, 190 U. S. 548, 47 L. ed. 1175, 23 Sup. Ct. Rep. 762.

Defendant urges that the evidence is insufficient to sustain the verdict of guilty. It is unnecessary to detail the evidence, for so to do would serve no good purpose. Suffice it to say that the birth of the child to an unmarried eighteen-year-old Russian girl is admitted. Much of the testimony, including that of the prosecutrix, was elicited through the use of interpreter. Her woeful ignorance stands out in bold relief throughout her testimony. She does not even know her own birthday. It is apparent also that she was reluctant to lay bare to the jury the whole truth as to her conduct with the defendant, and as to some circumstances her testimony is accordingly somewhat indefinite; but the actual facts necessary to convince us of the justice of the verdict are equally apparent in all the testimony, including that offered by the defendant himself. The prosecutrix is corroborated in essential and important details by the testimony of the defendant's father and defendant's brother-in-law, as well as by the brother of prosecutrix. Also defendant is contradicted and impeached in several instances in material portions of his testimony by other witnesses than the prosecutrix. The jury were fully justified in their finding that the defendant is the father of said child.

Defendant complains of leading questions having been asked of the mother during the trial. The permitting of examination by the use of leading questions is largely in the discretion of the trial judge who hears the testimony, sees the witnesses, and can fully comprehend the necessity or want of necessity for such method of examination, and accordingly the discretion of the trial judge as exercised in such particulars will not be disturbed excepting for gross abuse plainly resulting to the prejudice of the defendant. This rule is so well established as to need no citation of authorities in its support. In the instant case the ignorance of the prosecutrix, the circumstance unusual to her of being obliged to relate matters to her own shame in a public court room, show sufficient cause for sanctioning the method of examination alleged as error.

During the trial, acting upon the supposition that a foundation was laid, certain hypothetical questions were propounded to a physician as an expert witness. From a careful reading of the record we are satisfied that no sufficient foundation was laid prior to the offer of such testimony. Defendant sought to establish pregnancy by proof of cessation of the menses of prosecutrix a month or more before the date fixed by her as the probable time of conception. The testimony as to this is so indefinite and vague that the jury could not therefrom have found such condition to exist. The only definite testimony relating to this matter was, on the state's motion without objection by the defendant, stricken out, the court in such ruling stating that he would give defendant a chance to offer further proof along the same line, and opportunity to establish such fact if defendant so desired. The only testimony thereafter offered was sought from a person who had acted as interpreter for prosecutrix at the time she consulted a physician some months previous to the birth of her child, and such testimony does not show whether the cessation of menses was in February, or whether her last menses were in February, prior to the last of March or first of April, alleged as the date of intercourse with the defendant, granting that the proof is definite enough to permit a contention that she made such a statement. This testimony is too meager upon which to admit the expert testimony offered. Granting, however, that such testimony was admissible, it would be but corroborative of the testimony of the prosecutrix wherein she testified, during her direct examination, to several acts of intercourse with the defendant during the month of March, previous to the time of last intercourse, about April first. In her cross-examination she changed her testimony, denying all acts of intercourse excepting one, and fixed this act of intercourse as having taken place on April 1st, eight and one-half months prior to the date of her child's birth. The jury could have concluded from the testimony that she had intercourse with the defendant at other times, or at an earlier date, than the single instance upon which she finally relied. The action of the court in excluding this testimony was proper; but if conceded to be error, under all the testimony we fail to see how the rights of the defendant were prejudiced thereby.

Defendant's counsel excepts to certain remarks of the court made during the course of the trial, and urges the same as error. The remarks were occasioned by a question asked by defendant's counsel, to

which the remarks were but an answer. The remarks could not be prejudicial, and were but a concise statement of the issues, more fully explained thereafter by the court in its charge to the jury.

The last assignment of error is based upon the instruction of the court, the defendant claiming that the court misplaced the burden of proof in the instruction to the jury upon which such error is assigned. The instructions so excepted to were given at the close of a full and comprehensive instruction covering law and fact involved, and were intended by the court merely as a statement of the form of the two verdicts. In this respect the court instructed the jury that "two verdicts will be given you in this case, one reading, 'We, the jury, in the above-entitled case, find the defendant, Cornelius Goetz, to be the father of the bastard child born to L. M.' If, after examining all the evidence, you can fairly and conscientiously say that the preponderance of the evidence is in favor of the state, that is, you believe the weight of the evidence shows Cornelius Goetz begot this child on or about the 1st day of April, 1907, then you should bring in this verdict."

"The other verdict will read: 'We, the jury, in the above-entitled case, find the defendant, Cornelius Goetz, not to be the father of the bastard child born to L. M.' If upon examination of all the evidence, you find this to be the case, then it will be your duty to bring in this verdict."

To these instructions given orally, the defendant, within the period allowed, filed exceptions, claiming that the burden of proof was misplaced, and that the jury, to find the defendant not guilty of the charge, had to find affirmatively by a fair preponderance of the testimony that he was not the father of the child in question. In this connection no special significance can be placed upon the use of the word "find" in the instructions relating to the verdict of not guilty. In the ordinary criminal verdict the jury *find* the defendant not guilty because his guilt is not established, and therefore by verdict they affirmatively find as a fact his absence of guilt. This verdict is the equivalent to finding that the defendant is not guilty, and the equivalent to the negative statement by the jury that the defendant is not the father of the child. And the same argument could be made as to such expression that could be made to the use of the word "find" in a verdict of not guilty. In either case it is a finding of not guilty, because of either absence of proof of guilt or actual proof of innocence. It cannot be inferred from the mere

use of the word "find" that the burden of proof was thereby changed and placed upon defendant. The instruction given after the first form of verdict above recited was a proper statement of the law, as only a fair preponderance of proof is necessary to warrant a conviction in this class of cases, it being in this respect, as in many others, a civil action. But this was not the only instruction given by the court on the burden of proof. Preceding the instructions above quoted the court gave the following instruction to the jury: "The state is required to prove its case to your satisfaction by a fair preponderance of the evidence. By the term 'preponderance of the evidence' we mean the greater weight of evidence." Then the court in detail took up each statement contained in the complaint, and instructed the jury that they must find the truth of such statements by a fair preponderance of all the evidence in the case before the verdict first above quoted could be returned by them, particularly calling to the attention of the jury that the complaint charged the defendant with being the father of the child in question. And if the jury followed the court's instructions, as presumably they did, before finding defendant guilty they must have found he was the father of the child of prosecutrix by and under a fair preponderance of all the evidence in the case. The very fact that no exceptions were urged to the charge other than to the isolated portions referring to the form of the verdicts signifies that defendant was satisfied with the general charge. And the charge, taken altogether, amply protected all rights of the defendant. This assignment of error urged cannot be sustained.

Defendant urges as grounds for a new trial the nonappearance of a witness under subpœna to appear in defendant's behalf, which witness failed to appear on account of the weather and her being ill *en route* from her home to the place of trial. The record fails to disclose that any postponement of the trial was asked, or that the absence of the witness was even called to the attention of the trial court. That the trial continued over two days, and that defendant rested his case without making it known to the court that any witness was absent and without requesting a continuance. Such witness was a midwife, who attended prosecutrix during her confinement. The affidavit of this absent witness was thereafter filed and considered on the motion for new trial. The affidavit fails to disclose that such witness could give any testimony material to the case or tending in any way to establish a

defense. In fact the affidavit wholly fails to disclose what the testimony of such witness, if called, would be. It recites that she was present when the child was born and knew its condition, and then follows a rehearsal of her reasons for not being present in obedience to the subpœna. It is true that counsel for the defendant has in his own affidavit recited on information and belief facts tending to supplement said absent witness's testimony, but it is noticeable that the witness herself has carefully refrained from stating in her affidavit her knowledge of the matters so mentioned by counsel on information and belief. And besides, the testimony of the midwife, if she could testify as counsel has stated she would, would be but cumulative. The trial court properly denied the motion for a new trial.

This disposes of all assignments of error taken by the defendant, and accordingly the judgment is ordered affirmed.

MORGAN, Ch. J., not participating.